UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIZ D'ALLESSANDRO, | * | |
| JANE FREEMAN, TOD MCGRATH, | * | |
| JAY DRISCOLL, and MIKE NAPPI, | * | |
| As Trustees on behalf of the Hewitts | * | |
| Landing Condominium Trust, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-12567-IT |
| | * | |
| LENNAR HINGHAM HOLDINGS, LLC, | * | |
| HEWITTS LANDING TRUSTEE, LLC, | * | |
| LENNAR NORTHEAST | * | |
| PROPERTIES, INC. d/b/a LENNAR | * | |
| NORTHEAST URBAN, and LENNAR | * | |
| CORPORATION, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

July 12, 2018

TALWANI, D.J.

Plaintiffs Liz D'Allessandro, Jane Freeman, Tod McGrath, Jay Driscoll, and Mike Nappi as trustees of the Hewitts Landing Condominium Trust (the "Plaintiffs") bring this action against Defendants Lennar Corporation ("Lennar Corp."), Lennar Hingham Holdings, LLC ("Lennar Hingham LLC"), Hewitts Landing Trustee, LLC ("Hewitts Trustee LLC"), and Lennar Northeast Properties, Inc. d/b/a Lennar Northeast Urban ("Lennar Northeast Inc.") (collectively the "Defendants") over the promotion, design, development, and maintenance of a condominium complex (the "Condominium") located in Hingham, Massachusetts. Lennar Corp. moves to dismiss the claims against it for lack of personal jurisdiction. For the reasons that follow, Lennar Corp.'s motion is DENIED.

I.      Factual Background[1]

Lennar Corp. is incorporated in Delaware with its principal place of business located in Florida. Although it is the ultimate parent of the remaining defendants, these subsidiaries are all adequately capitalized, and each manages its own operations and maintains bylaws and corporate formalities separate from Lennar Corp. Sustana Aff. ¶¶ 5, 10, 12-13 [#34]. Lennar Corp. has never registered to transact business in Massachusetts. Sustana Aff. ¶ 6 [#34]. Lennar Corp. has never owned the Condominium. Sustana Aff. ¶ 8 [#34]. Lennar Corp. does not currently conduct business in Massachusetts or own any real or personal property, offices, or bank accounts in the state. Sustana Aff. ¶¶ 7-8 [#34].

In November 2005, Lennar Corp. and Lennar Hingham LLC entered into an Exclusive Sales and Marketing Agreement (the "Agreement") with NRT New England Incorporated, d/b/a Coldwell Banker ("Coldwell Banker") located in Waltham, Massachusetts concerning the marketing and sales of units at the Condominium. Gorman Aff. ¶ 5 [#39]; Ex., Pl.'s Mem. Opp'n. Mot. Dis. ("Pl.'s Ex.") A [#38-1]. Lennar Corp. agreed to guarantee Lennar Hingham LLC's obligations to Coldwell Banker, an arrangement to which Lennar Corp. once again assented when the parties amended the contract in 2007. Id.

On November 6, 2009, an entity identified as "Lennar, East Coast Division" issued a press release in Boston announcing the Condominium's opening. The press release was titled, "Lennar's Hewitts Landing Luxury Townhome Community Opens with Seven Homes Sold in Only Two Weeks" and began by stating:

> Lennar (NYSE: LEN), one of the nation's leading homebuilders, has set the stage for luxury residential living in Hingham, Massachusetts with Hewitts Landing. Lennar's new

---

[1] The facts relevant to Lennar Corp.'s motion to dismiss are set forth under the standards used for a motion to dismiss for lack of personal jurisdiction. See Section II.

> waterfront community within the Hingham Shipyard is now officially open for sale and the homebuilder is pleased to announce an overwhelming response with seven homes sold in just two weeks.

Pl.'s Ex. C [#38-3]; McGrath Aff. ¶ 3 [#40]. The release contained an "About Lennar" section that briefly detailed the corporation's history and reputation. Id. Contact information directed those interested to a representative from "Lennar - Northeast Urban Division." Id.

A website with the URL "www.hewittslanding.com" described site plans and floor plans for the Condominium under the heading "Hewitts Landing Community by Lennar" and included Lennar Corp.'s name and web address. Pl.'s Ex. D [#38-4]; McGrath Aff. ¶ 3 [#40]. Lennar Corp.'s copyrighted logo appeared on a pamphlet advertising the Condominium. Id.

Two pieces of correspondence from 2015 (together, the "Betz Correspondence") are also part of the record. The first is a memorandum dated April 17, 2015, from "Gary Betz, Lennar Hingham Holdings," to the Town of Hingham Zoning Board. Pl.'s Ex. E [#38-5]; McGrath Aff. ¶ 3 [#40]. The memorandum states in relevant part:

> As you well know, Lennar is beginning to wind down its building activity in the Hewitts Landing Community. We are in the process of closing out our last building and are working to complete all the final details. However, we have committed to work through a handful of remaining tasks in the community and will be working with our existing homeowners and the condominium for a few more months. We will be addressing standard warranty items as well as certain design improvements above and beyond warranty tasks. In that spirit, we request permission to maintain a "Construction Office" trailer on the common grounds for the next 90 to 180 days without jeopardizing our final "Certificate of Occupancies."
>
> We feel that having the Construction Office is a critical part of our commitment to the community. Further, this short term continued presence re-assures our homeowners of our commitment, providing them the ability to readily contact our representatives on site. Finally, removing it will certainly make our near term coordination of the work difficult and inefficient which we feel will result in further unnecessary anxiety to our homeowners.
>
> It is our continued focus to complete the Hewitts Landing project with the utmost respect for the community, our homeowners and the Town of Hingham and feel

very strongly that this request is necessary to achieve this goal.
Id. The letterhead was for "Lennar®" and included the Lennar.com website. Id.

The second piece of correspondence is a letter dated June 8, 2015, from Gary Betz providing to Condominium homeowners "an update of the work we are doing in the community." Pl.'s Ex. F [#38-6]; McGrath Aff. ¶ 3 [#40]. In this letter, Betz made no reference to "Lennar Hingham Holdings" in identifying himself. The letter asked for a phone or email response to an inquiry about a sprinkler system project. The email address provided was "gary.betz@lennar.com." Id.

    II.    Lennar Corp.'s Motion to Dismiss

        a. *Standard*

When a district court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, its determination is governed by the prima facie standard. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, the plaintiff must "proffer[] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). Plaintiffs bear the burden of persuasion. See id. ("A Corp. bears the burden to establish that specific jurisdiction exits over All American."). The court "must accept the plaintiff's (properly documented) evidentiary proffers as true" and "construe them in the light most congenial to the plaintiff's jurisdictional claim." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (internal citations omitted). The facts put forward by the defendant become "part of the mix only to the extent that they are uncontradicted." Id.

Where the Massachusetts long-arm statute applies, a court "may proceed directly to the Constitutional analysis because the long-arm statute is 'coextensive with the limits allowed by

the United States Constitution.'" Grice v. WIM Holdings Grp., LLC, No. 17-10944-WGY, 2017 WL 6210891, at *4 (D. Mass. Dec. 8, 2017) (quoting Hannon v. Beard, 524 F.3d 275, 280 (1st Cir. 2008)); see also Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016).

A court may exercise personal jurisdiction over an out-of-state defendant in conformity with the Due Process Clause "only if that defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Copia Commc'ns, 812 F.3d at 4 (quoting Int'l Shoe Co. v. Washington, 236 U.S. 310, 316 (1945)). "Personal jurisdiction may be either general or specific." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). A court has specific jurisdiction if the cause of action arises out of, or relates to, a defendant's contacts with the forum state. Id.

Analysis of specific jurisdiction has three prongs: (1) the asserted causes of action must arise from or relate to the defendant's contacts with the forum state; (2) the defendant must have purposefully availed itself of the protections of the forum state's laws by means of those contacts; and (3) the exercise of the court's jurisdiction must be consistent with principles of justice and fair play. See Carreras v. PMG Collins, LLC, 660 F.3d 549, 554 (1st Cir. 2011). "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 370 (D. Mass. 2017) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, 196 F. 3d 284, 288 (1st Cir. 1999)).

When examining relatedness, "a district court must consider whether the claim underlying the litigation … directly arises out of, or relates to, the defendant's forum-state activities." Hadjuk v. Amada Co. Ltd., 2013 WL 12323378, at *4 (D. Mass. Oct. 1, 2013) (citing Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009)). District courts determine whether connections satisfy these requirements using "a flexible, relaxed standard."

5

Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st. Cir. 2016) (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994)). To this end, physical presence of defendant in the forum-state is not necessary to satisfy the relatedness requirement, though it is relevant to the inquiry. Walden v. Fiore, 571 U.S. 277, 285 (2014). If the lawsuit sounds in tort law, then the relatedness inquiry requires a district court to "probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad., 196 F. 3d at 289 (internal citations omitted).

    b. *Analysis*

Lennar Corp. concedes that the Massachusetts long-arm statute applies here. Plaintiffs do not contend that this Court has general jurisdiction over Lennar Corp., but do contend that the court has specific jurisdiction over the corporation to adjudicate Plaintiffs' negligent misrepresentation claim. Lennar Corp. opposes specific jurisdiction on the ground that the negligent misrepresentation claim does not arise out of its own forum-state activities.

Lennar Corp. primarily contests Plaintiffs' facts regarding Lennar Corp.'s involvement in the marketing of the Condominium. See Sustan Aff. ¶¶ 7, 9. Yet Lennar Corp.'s facts will become "part of the mix only to the extent that they are uncontradicted." Adelson, 510 F.3d at 48. Here, accepting Plaintiffs' properly documented evidentiary proffers as true and construing them in the light most congenial to Plaintiffs' claim, the Court finds that Plaintiffs have met their burden of demonstrating Lennar Corp.'s own role in the Condominium's advertisement. First, the November 6, 2009 press release was issued by "Lennar, East Coast Division." Unlike "Lennar Northeast Properties, Inc." or "Lennar Hingham Holdings, LLC"—names indicating that the entities are distinct legal entities—the term "division" suggests the opposite: that Lennar, East Coast Division is a division of Lennar Corp. Second, the release describes Lennar Corp. as

having "set the stage" for the Condominium, refers to the Condominium as "Lennar's new waterfront community," and concludes with a brief history of Lennar Corp., further supporting the claim that Lennar Corp. itself was advertising the Condominium. Pl.'s Ex. C [#38-3]. Moreover, the press release specifically identifies Lennar Corp. not only by name but also by its New York Stock Exchange symbol.

Third, the marketing material that Plaintiffs submit also supports their claim that Lennar Corp. maintained suit-related contacts with Massachusetts. As noted above, Lennar Corp.'s name and web address appeared on the Hewitts Landing website—again, with no identification of "Hewitts Landing" as a corporate subsidiary rather than a marketing label—alongside site plans and floor plans for the Condominium. Pl.'s Ex. D [#38-4]. The top of the webpages read, "Hewitts Landing Community by Lennar," while the bottom displayed Lennar Corp.'s web address. Id. Furthermore, Lennar Corp.'s copyrighted logo appeared on a pamphlet advertising the Condominium. Id. Both the website and the promotional pamphlet "represent a meaningful link between [Lennar Corp.'s] contact and the harm suffered" in the negligent misrepresentation claim insofar as the materials depict the quality of the Condominium alongside the company's apparent endorsement of such representations. Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 715-16 (1st Cir. 1996).

Fourth, and finally, the Betz Correspondence, construed in the light most congenial to Plaintiffs' claim, suggests that Lennar Corp. maintained suit-related contacts within Massachusetts through Gary Betz as an agent of Lennar Corp. An agent's activities may expose a principal to personal jurisdiction within the state where those actions occurred. Jet Wine & Spirits, Inc. v. Baccardi & Co., 298 F.3d 1, 7-8 (1st Cir. 2002). "An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf [of]

7

and for the benefit of the principal, and subject to the principal's control." Theos & Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113, 1119 (Mass. 2000). Betz's initial memorandum was sent on letterhead with Lennar Corp.'s logo and web address, and his subsequent letter directed homeowners to Lennar Corp.'s email system. While the initial memorandum included a reference to "Lennar Hingham Holdings," this name was given without any identification (such as the abbreviations "Inc." or "LLC") to suggest that it was a distinct and independent legal entity. The subsequent letter did not even make reference to "Lennar Hingham Holdings." Both pieces of correspondence sought to resolve matters related to completion of the building project. Construing this evidence in the light most congenial to the Plaintiffs' jurisdictional claim, as the court must, see Adelson, 510 F.3d at 48, the Betz Correspondence suggests at minimum that Gary Betz was an agent of Lennar Corp.

Nor do the legal precedents that Lennar Corp. cites support its case. First, the instant case does not fall under the holding of Walden, 571 U.S. 277. That case involved a defendant engaged in tortious conduct in one state against plaintiffs who the defendant knew resided in a different state. Id. at 279. The Court held that defendant's contacts with plaintiffs in the first state did not establish specific jurisdiction over defendant in plaintiffs' state of residence. Id. Here, in contrast, the publications of the press release, website, and Betz Correspondence all occurred in Massachusetts, linking Lennar Corp.'s suit-related contacts to the forum state itself, not just to the Plaintiffs. In fact, Walden contemplated as jurisdictionally sufficient contacts analogous to the press release and marketing materials the Plaintiffs submit. See id. at 285 (noting defendants who circulated "magazines to 'deliberately exploit[t]' a market in the forum State" warranted specific jurisdiction and that "physical entry" into the forum, "either by the defendant in person or through an agent, goods, mail, or some other means[,] . . . is certainly a relevant contact"

8

(internal citations omitted)). The press release, for instance, focused on a development in Massachusetts, was issued in Massachusetts, and was aimed at residents of Massachusetts. Id. at 287 (internal citations omitted) (noting jurisdiction over defendant proper where forum state "[wa]s the focal point both of the story and of the harm suffered" in libel case).

Lennar Corp. argues further that even if did issue the press release, that act is insufficient to support specific jurisdiction, citing Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc., 196 F. Supp. 3d 985, 991-92 (D. Minn 2016) and Ergo Licensing, LLC v. Cardinal Health, Inc., No. 08-259-P-S, 2009 WL 2021926, at *6-7 (D. Me. Jul. 13, 2009). The first cited case explained that for purposes of general jurisdiction, the foreign corporation's affiliation with the forum state must be so continuous and systematic as to render the foreign corporation essentially at home in the forum state, Goodbye Vanilla, LLC, 196 F. Supp. 3d at 889 (citing Daimler AG v. Bauman, 571 U.S. 117, 126 (2014)), and then assessed when and how a parent's "'close, synergistic' relationship [with the subsidiary] that goes beyond 'mere ownership'" may create the parent's own nexus so continuous and systematic as to render them essentially at home in the forum State that the parent may be subject to general jurisdiction. Id. at 991-92. But here, Plaintiffs are not claiming general jurisdiction, but specific jurisdiction. Moreover, because specific jurisdiction in the instant case is based on the evidence directly attributed to Lennar Corp. (or an agent), there is no need to consider any "close, synergistic relationship" with a subsidiary as the court did in Goodbye Vanilla. See id. at 989-90.

In the second case, in considering specific jurisdiction over a patent claim, the court concluded that "[a] parent corporation cannot be held to have submitted itself to the jurisdiction of the courts in a state in which its subsidiary is subject to such jurisdiction merely be referring to itself in public as a single corporation that produces the product actually produced by the

subsidiary." Ergo Licensing, LLC, 2009 WL 2021926 at * 6. But although such a reference in a press release or in marketing material may not support specific jurisdiction for *a patent claim*, it may certainly support specific jurisdiction for *a misrepresentation claim* based on the parent corporation's issuance of such publications.

Accepting Plaintiffs' facts as true, and reading them in the light most favorable to their jurisdictional claim, Lennar Corp.'s Massachusetts contacts are sufficient to support specific jurisdiction.

### III. Conclusion

For the foregoing reasons, Lennar Corp.'s Motion to Dismiss [#33] is DENIED.

IT IS SO ORDERED.

Date: July 12, 2018 /s/ Indira Talwani
United States District Judge