UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIZ D'ALLESSANDRO, JANE FREEMAN, TOD MCGRATH, JAY DRISCOLL, and MIKE NAPPI, As Trustees on behalf of the Hewitts Landing Condominium Trust, | * * * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 17-cv-12567-IT |
| LENNAR HINGHAM HOLDINGS, LLC, HEWITTS LANDING TRUSTEE, LLC, LENNAR NORTHEAST PROPERTIES, INC. d/b/a LENNAR NORTHEAST URBAN, and LENNAR CORPORATION, | * * * * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

October 28, 2019

TALWANI, D.J.

Before the court is Defendants/Third-Party Plaintiffs Lennar Hingham Holdings, LLC, Hewitts Landing Trustee, LLC, Lennar Northeast Properties, Inc. d/b/a Lennar Northeast Urban, and Lennar Corporation's (collectively, "Lennar Defendants") Motion for Partial Summary Judgment [#212]. The Lennar Defendants contend that the claims brought by the Plaintiff Trustees on behalf of Plaintiff Hewitts Landing Condominium Trust ("Condominium Trust") are partially barred by a Massachusetts statute of repose, Mass. Gen. Laws ch. 260, § 2B. The court finds that only two of the Condominium Trust's claims are tort claims subject to the statute of repose, and that Defendants have failed to show that the "improvements" for purposes of the statute of repose relate to individual units or buildings, rather than the Hewitts Landing

1

Condominium (the "Condominium") as a whole. Accordingly, Defendants' <u>Motion for Partial Summary Judgment</u> [#212] is DENIED.

I.  Background

This action arises out of the construction, marketing, sale, and management of the Condominium. Lennar Northeast Properties, Inc. d/b/a Lennar Northeast Urban ("Lennar Northeast") was the developer of the project. Defs.' Third-Party Compl. ¶ 29 [#46]. Lennar Hingham Holdings, LLC ("Lennar Hingham") was the contractor and construction manager for the project. <u>Id.</u> Hewitts Landing Trustee, LLC ("Lennar Trustee") served as the trustee of the Hewitt Landing Condominium Trust between 2010 and 2015. Pl.'s Compl. ¶ 18 [#1-1]; Lennar Corp.'s Answer ¶ 18 [#79]. Lennar Corporation ("Lennar Corp.") is the parent company of Lennar Northeast, Lennar Hingham, and Lennar Trustee. Sustana Aff. ¶ 10 [#34-1].[1]

The Condominium was planned as a "phased condominium" with a maximum of 150 units. Pl.'s Statement of Undisputed Facts ("Pl.'s SOF") ¶ 3 [#226]. Construction took place between 2008 and 2015. Defs.' Statement of Undisputed Facts ("Defs.' SOF") ¶ 1 [#214]. Ultimately, Lennar built 150 units over the course of twenty-four phases of construction. Pl.'s SOF ¶¶ 4, 6 [#226]. The units are enclosed in twenty-eight different buildings. <u>Id.</u> at ¶ 4. The

---

[1] Plaintiff alleges that Lennar Corp. should be liable for the wrongdoing of the subsidiary companies on an alter ego theory, <u>see</u> Pl.'s Compl. ¶¶ 62-68 [#1-1], and includes allegations against all Defendants without specifying which Defendant allegedly committed specific acts of wrongdoing. <u>See, e.g.</u>, <u>id.</u> at ¶ 55 ("The Lennar defendants breached their duty by designing and constructing buildings replete with common area defects, which they subsequently failed to remedy"). For purposes of this summary judgment motion, Defendants have also referred collectively to the four Defendants as "Lennar" and have not attempted to parse liability between themselves. <u>See</u> Defs.' Mem 1-2 [#213]. Accordingly, for purposes of this motion, the court does not attempt to tie specific allegations, facts, or relief to individual Defendants except when specifically called for by the record.

2

claims at issue relate to the common areas of these buildings.[2]

While the Condominium construction was ongoing, the project's architect would submit declarations to the Town of Hingham swearing that individual units or individual buildings were "substantially complete" and could be occupied for their intended use. Defs.' SOF ¶ 6 [#214]. Shortly after such declarations were submitted, the Town of Hingham issued certificates of occupancies for the unit or building. See id. at ¶¶ 8–30. For six of the buildings, the architect signed affidavits of substantial completion for each unit in the building more than six years before this action was commenced. Id. For five of these six buildings, the Town of Hingham issued certificates of occupancy for the buildings and all of their units more than six years before this action commenced. Id.

On June 25, 2010, while the construction was ongoing, Lennar Hingham recorded the Master Deed of the Condominium with the Plymouth County Registry of Deeds, thereby establishing the Condominium as a legal entity. Defs.' SOF ¶ 2 [#214]. On the same date, Lennar Trustee executed a Declaration of Trust, recorded in the Plymouth County Registry of Deeds, establishing the Condominium Trust. Pl.'s Compl. ¶ 1 [#1-1]; Lennar Corp.'s Answer ¶ 1 [#79]; Defs.' Third-Party Compl. ¶ 31 [#46]. The Trust is responsible for the operation of the Condominium. See Pl.'s Compl. ¶¶ 16–19 [#1-1]; Lennar Corp.'s Answer ¶¶ 16–19 [#79]; Mass. Gen. Laws ch. 183A, § 1. Included in the Condominium Trust's responsibilities is the operation, maintenance, repair and/or replacement of the common areas and limited common areas[3] of the

---

[2] The common areas of the Condominium essentially comprise all structural components and columns of the buildings, and all areas of the buildings and facilities (e.g., foundations, floor slabs, columns, beams, joints, all conduits, pipes, central services, etc.) with the exception of the unit interiors. See Gorman Aff., Ex. A, Hewitts Landing Master Deed ¶ 6(a) [#227-1].

[3] The limited common areas are a type of common area that is designated for the exclusive use of one or more, but fewer than all unit owners (e.g., a patio affixed to a unit). Id. at ¶ 6(b). The owners of the appurtenant units are responsible for non-structural maintenance of the limited

Condominium. Gorman Aff., Ex. A, Hewitts Landing Master Deed 5–6 [#227-1]. The responsibilities of the Trust are dictated not only by the Declaration of Trust, but also by Massachusetts Statute. See id.; Mass. Gen. Laws ch. 183A.

The Trust was solely operated by Lennar Trustee from 2010 until late 2015. See Defs.' SOF ¶ 1 [#214]; Pl.'s Compl. ¶¶ 1, 15, 18 [#1-1]; Lennar Corp.'s Answer ¶¶ 1, 15, 18 [#79]. In December 2015, the unit owners of the Condominium took control of the operations of the Condominium Trust. Defs.' SOF ¶ 3 [#214].

On November 3, 2017, the Trustees of the Condominium Trust, on behalf of the Trust, brought this action in Massachusetts' Superior Court. See Notice of Removal ¶ 1 [#1]. The Trust alleges that it engaged engineering and architectural consultants to investigate the design, construction, and conditions of the buildings, common areas, and limited common areas. See Pl.'s Compl. ¶ 20 [#1-1]. According to Plaintiff, these investigations have revealed a significant number of deficiencies and building code violations in the design and/or construction of the buildings, common areas, and limited common areas of the Condominium. Id. at ¶¶ 21–26. The complaint alleged breach of the Condominium documents (Count I), breach of fiduciary duty (Count II), intentional misrepresentation (Count III), negligent misrepresentation (Count IV), negligence (Count V), breach of express and implied warranty (Count IV), and violation of Mass. Gen. Laws ch. 93A (Count VIII). See Pl.'s Compl. ¶¶ 28–74 [#1-1]. The alleged facts underlying Plaintiff's claims relate to negligent construction of the Condominium common and limited common areas, misrepresentations made by Lennar in the course of marketing the units to buyers, and mismanagement of the Condominium Trust while Lennar was in control of the Trust's operations. See id. The suit seeks recovery for damages relating to the Condominium's

---

common elements (e.g., cleaning and snow removal). Id.

common and limited common areas. See, e.g., id. at ¶¶ 53–57 (describing negligence count as follows: "defendants owed a duty to the Trust to deliver properly designed and constructed buildings free of common area and limited common area defects" and "Lennar defendants breached their duty by designing and constructing buildings replete with common area defects . . . ."). The suit does not claim damages arising out of the negligent design or construction of the unit interiors, but does claim consequential damage to the unit interiors. See id. at ¶¶ 25–26.

II.     Standard of Review

On a motion for summary judgment, the court must construe "the record in the light most favorable to the non-movant and resolv[e] all reasonable inferences in that party's favor." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008); see also Fed. R. Civ. P. 56. ("Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7–8 (1st Cir. 1990) (internal quotation marks and citation omitted). "To defeat a motion for summary judgment, the evidence offered by the adverse party cannot be merely colorable or speculative . . . [it] must be significantly probative of specific facts." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (internal quotation omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Rossy v. Roche Prods., Inc., 880 F.2d 621, 623–24 (1st Cir. 1989). Ultimately, whether a defendant's activities fall within the statute of repose is a question of law. Snow v. Harnischfeger Corp., 12 F.3d 1154, 1158 (1st Cir. 1993).

III. Discussion

A. Overview

The Massachusetts statute of repose, as stated in ch. 260, § 2B, provides:

> Action of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . [shall not] be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.

Mass. Gen. Laws ch. 260, § 2B. "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Olmstead v. Dep't of Telecomms. & Cable, 466 Mass. 582, 588 (2013) (citing Sullivan v. Brookline, 435 Mass. 353, 360 (2001). Accordingly, the court starts with the statute and the legislative aims as they have been restated by the Massachusetts Supreme Judicial Court ("SJC").

The SJC has explained that the Massachusetts Legislature passed this statue of repose in response to the SJC's own case law finding that architects and builders could be held liable in tort by individuals with whom they are not in privity. See Klein v. Catalano, 386 Mass. 701, 708 (1982). The Legislature was concerned that allowing builders and architects to be sued for negligence in their work years after the job was completed would raise substantial concerns about fairness and the practicalities of the available evidentiary record. Id.

The SJC explained that an ordinary statute of limitations did not begin to run until either the date of injury or its discovery, leaving those involved in construction subject to possible liability throughout their professional lives and into retirement: "There comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations . . . ." Klein, 386 Mass. at 709 (citing Rosenberg v. North Bergen, 61 N.J.

190, 201 (1972)). Without limiting the duration of liability, architects, contractors, and others engaged in the design and construction of real property may have to, years after completing their work, mount a defense when architectural plans may have been discarded, previous versions of applicable building codes may no longer be available, memories may have faded, and witnesses may have disappeared. Klein, 386 Mass. at 709 (citing Howell v. Burk, 90 N.M. 688, 694 (Ct. App. 1977).

Although the rule arose out of equitable concerns, it applies as a "rigid prohibition" that is "not subject to any form of equitable tolling." Joslyn v. Chang, 445 Mass. 344, 350–51 (2005). The statute's effect is to completely "abolish or abrogate" the tort remedy that would otherwise be available. Klein, 386 Mass. at 702.

The court considers first which Counts in the Complaint are tort claims subject to this statute of repose, and then considers what constitutes an "improvement" for purposes of the statute.

B. Claims Subject to the Statute of Repose

The statute of repose applies only to tort claims for damages arising out of Defendants' alleged neglect in "the design, planning, construction or general administration of an improvement to real property." Only two of the counts—Counts V and VI—are such claims.

To the extent that Counts III, IV, and VII allege that one or more of the Lennar Defendants engaged in misrepresentation or employed unfair business practices with regard to the sale of the Condominium units, the statute of repose does not apply. See Sullivan v. Iantosca, 409 Mass. 796, 799 (1991) (holding that when single defendant both performed construction and acted as seller of house, statute of repose does not bar claim to extent defendant engaged in wrongdoing in their role as seller of units). Bridgwood v. A.J. Wood Constr., Inc., 480 Mass.

7

349, 355 (2018), on which Defendants rely, is not to the contrary. In Bridgwood, the SJC concluded that the plaintiff's ch. 93A claim was "indistinguishable from a claim of negligence," because the plaintiff merely claimed that the defendant "failed to perform the electric work in compliance with [building codes]." 480 Mass. at 356. In contrast, the Plaintiff here alleges that, above and beyond any acts or omissions during the construction of the Condominium, Lennar engaged in misrepresentation and unfair business practices in representing the property to prospective buyers. Because these claims against the seller of property arise from distinct facts and allege distinct wrongdoing from a negligence action against architects and builders, the claims are not subject to repose under the statute. See Rosario v. M.D. Knowlton Co., 54 Mass. App. Ct. 796, 802–803 (2002) (holding that claims are barred when they "essentially allege the same elements as the negligence claims" (quoting McDonough v. Marr Scaffolding Co., 412 Mass. 636, 642 )).

The same is true for Counts I and II, which allege that the Lennar Defendants, as Trustee, breached the Condominium Documents and a fiduciary responsibility to the Trust by failing to honor obligations under the Condominium Documents and duties, as fiduciary to the Condominium Trust. Lennar's alleged wrongdoings as Trustee relate to the alleged failure to investigate and address construction problems, not the construction itself. As with the misrepresentation claim against the seller, these breach of fiduciary duty claims against the Trustee are not barred by the statute of repose. See Sullivan, 409 Mass. at 799.

In contrast, Plaintiff's claims of negligence (Count V) and breach of an implied warranty (Count VI), are squarely claims that arise out of an alleged "deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property." Mass. Gen. Laws ch. 260, § 2B. Accordingly, these two claims are subject to the Massachusetts statute

8

of repose.

## C. The "Improvements" at Issue

The statute of repose applies to "an improvement to real property." Id. Defendants contend that because the project architect issued certifications of substantial completion and/or the Town of Hingham issued certificates of occupancy as to units and buildings in the Condominium development as they were completed, the repose period began running as to those parts of the Condominium when the documents were issued. Defs.' Mem. 7 [#213]. Plaintiff contends that the statute does not begin to run for the common and limited common areas of the Condominium until the entire Condominium development, not just portions of the Condominium, is completed. Pl.'s Opp'n 2 [#225]. Thus, the dispute as to whether the statute of repose bars Claims V and VI turns on whether the "improvement" is an individual unit or building or, as Plaintiff argues, the Condominium development as a whole.

Defendants argue first that the SJC squarely addressed this question and "dictated" that the filing of the Architect's certificate of substantial completion for the individual buildings begins the running of the six-year repose period. Defs.' Mem. 9 [#213] (citing Aldrich v. ADD Inc., 437 Mass. 213, 221–22 (2002)). In Aldrich, however, the certificate at issue related to the "substantial completion of *the condominium*." 437 Mass. at 221 (emphasis added). The court *did not* rely on a certificate of completion for a portion of the condominium development to start running the statute of repose as to that portion. Id. Aldrich therefore does not resolve the question before the court, namely, what is the "improvement" that must be substantially completed for the purposes of the statute of repose.

Defendants contend that the court should conclude that each building of the Condominium development is an "improvement" for the purpose of the repose period. Defs.'

9

Reply 3 [#237]. They argue that Massachusetts state and federal courts have "long defined 'improvement' for purposes of the statue of repose as: any 'permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.'" Id. at 3 (citing Milligan v. Tibbetts Eng'g Corp., 391 Mass. 364, 368 (1984)). In Milligan, however, the court sought to determine whether the term "improvement" applied to roads as well as buildings, and not where to draw a line as to the scope of an "improvement." 391 Mass. at 367.

Plaintiff argues that to construe "improvement" as Defendants contend ignores that this specific development was not 150 different subprojects relating to the individual units or twenty-eight different subprojects relating to the individual buildings, but one endeavor to build a single Condominium development. Pl.'s Opp'n 6–7 [#225]. The court agrees. The record on summary judgment would allow a jury to find that Lennar did not engage in the separate design and construction of 150 individual units or twenty-eight individual buildings, with different architects or general contractors, but instead engaged in the design and construction of a single Condominium development, Hewitts Landing Condominium, with a single general contractor, Lennar Hingham. See Defs.' Third-Party Compl. ¶ 29 [#46]. The 150 units were conceived of as the potential scope of the project from the very beginning. See Pl.'s SOF ¶¶ 2–3 [#226]. The same general contractor and architect was used throughout. The project was defined legally as a single Condominium, with a single Trust, maintaining exclusive control over the common and limited common elements of the entire Condominium. Pl.'s Compl. ¶ 18 [#1-1]; Lennar Corp.'s Answer ¶ 18 [#79]; Sustana Aff. ¶ 10 [#34-1].

Taken together, these facts indicate that the Condominium was not a series of

improvements but one improvement. As a result, the repose period starts running upon completion of the entire improvement, as completion is defined in the statute. See Douglas Souza vs. Toll MA Land LP, C.A. No. 2017-01924 (Mass Super. Ct. Jan. 28, 2019) (Feeley, J.) (unpublished) (finding where common elements of the condominium were constructed as "one continuous construction project with no large distinct phases, and units merely came on line for occupancy as the particular unit, and not a large distinct phase was completed," the statute of repose does not begin running upon the substantial completion of the individual units); see also State v. Perini Corp., 425 N.J. Super. 62, 77 (App. Div. 2012), aff'd as modified, 221 N.J. 412 (2015) ("the statute of repose does not run against the general contractor, the project supervisor, or other contractors who have continuing duties. As to them, applying a separate trigger date to a component of a construction project can result in unending and complex periods of time in determining what claims for injuries or damages are timely brought. For contractors who remain on the job, the statute is triggered when their own work on the project is substantially completed"); compare Vill. Lofts at St. Anthony Falls Ass'n v. Hous. Partners III-Lofts LLC, 924 N.W.2d 619, 627–28 (Minn. Ct. App. 2019), review granted in part (Apr. 24, 2019) (holding that the statute of repose for a "Building A" of a multi-phase development began running upon the completion of Building A, because "Building B" was the result of separate written agreements executed approximately twenty-five months apart, relied on different sets of subcontractors and subcontractor agreements, and the execution of Building B's construction agreement did not occur until nearly a year after Building A was complete and certified for occupancy).

Defendants miss the mark by arguing that the SJC has defined the term "improvement" for the purposes of the statute of repose as a "permanent addition to or betterment of real

property that enhances its capital value," and therefore completion of individual units should trigger the statute of repose period. Defs.' Reply 3–4 [#237] (citing Milligan, 391 Mass. at 368). The question before the court is not whether construction of an individual unit or building *can* constitute an improvement in real property; that it can is not in dispute. The question, instead, is whether the construction of a portion of a project can constitute completion of an improvement for triggering the repose period even while the overall project remains underway. Because of the specific facts applicable here, as reviewed above, the court concludes that the improvement constitutes the entire Condominium.

This result is consistent with a dearth of caselaw finding developers and general contractors may divvy up a large continuous project into separate phases in order to limit their liability in the manner proposed by Defendants. Instead, from what case law exists, courts have looked to the completion of the *entire* project for triggering the six-year clock for those who oversee the entirety of a project. See, e.g., Aldrich, 437 Mass. at 221–22 (finding the statute of repose to run starting on "date of substantial completion of the condominium"); Bridgwood, 480 Mass. at 353 ("The statute thus protects contractors from claims arising long after the *completion* of their work") (emphasis added); Foote-Smith v. Keen Dev. Corp., No. 991792, 2001 WL 747650, at *2 (Mass. Super. Ct. Mar. 19, 2001) (ruling that the statute of repose did not start running until "all of the Phase I and Phase II units opened"); Douglas Souza, C.A. No. 2017-01924 (ruling that "the statute of repose did not start until to run until the last of the 240 planned units were opened / occupied").

Defining an "improvement to real property" based on the overarching scope of work instead of individual parcels thereof is also not inconsistent with the aims of the Legislature in promulgating the statute of repose. As the SJC has expressed, the statute of repose was intended

12

to put "an absolute outer limit" on a contractor's liability so that contractors did not face liability for injuries that occurred "many years after the . . . contractor had *completed his work*." Klein v. Catalano, 386 Mass. 701, 708, 437 N.E.2d 514, 520 (1982) (emphasis added). This provision was motivated out of a sense of fairness regarding the outsized liability faced by those in this specific trade. Id. Where Lennar was sued two and a half years after completing the Condominium, the court does not find that Lennar has been subject to an outsized liability that could not be anticipated. The same is true for the Legislature's concern that the passage of time would result in the possibility that documents and witnesses would no longer be available, and memories would have faded. Since Lennar saw this continuous project through from start to finish, the practical concerns about the availability of witnesses and evidence are not implicated in the same manner as they would have been if different general contractors had completed discrete portions of the project more than six years before this action was filed.[4]

IV.  Conclusion

For the reasons stated above, Defendants' Motion for Partial Summary Judgment [#212] is DENIED.

IT IS SO ORDERED.

Date: October 28, 2019                                        /s/ Indira Talwani
                                                              United States District Judge

---

[4] This order does not address the running of the statute of repose for subcontractors that performed discrete services for the developer or general contractor. In such cases, subcontractors' discrete obligations may constitute an improvement that is subject to the running of the six-year period before the overall project is completed. Furthermore, the conclusion here takes specifically into account that the lawsuit concerns the common and limited common areas of the construction. Had this suit concerned the interiors of the units, the analysis may be different. Because these questions are not before the court and have not been subject to adversarial briefing, the court does not resolve those hypotheticals now.