UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIZ D'ALLESSANDRO, et al.,        * | |
|     Plaintiffs,        * | Civil Action No. 1:17-cv-12567-IT |
|     v.        * | |
| LENNAR HINGHAM HOLDINGS, LLC,        * | |
| et al.,        * | |
|     Defendants,        * | |
| _____        * | |
|        * | |
| LENNAR HINGHAM HOLDINGS, LLC,        * | |
| et al.,        * | |
|     Third-Party Plaintiffs,        * | |
|     v.        * | |
| BARTON PARTNERS ARCHITECTS        * | |
| PLANNERS, INC., et al.,        * | |
|     Third-Party Defendants,        * | |
| _____        * | |
|        * | |
| ARCHER EXTERIORS, INC.,        * | |
|     Fourth-Party Plaintiff,        * | |
|     v.        * | |
| JOSE A. GARCIA RODRIGUES d/b/a        * | |
| JAG GENERAL CONSTRUCTION, et al.,        * | |
|     Fourth-Party Defendants.        * | |

MEMORANDUM & ORDER

July 21, 2023

TALWANI, D.J.

Third-Party Plaintiffs Lennar Hingham Holdings, LLC, and Lennar Northeast Properties, Inc., d/b/a Lennar Northeast Urban (collectively, "Lennar") contend that Third-Party Defendants Archer Exteriors, Inc. ("Archer"), F.M. Home Improvement, Inc. ("F.M. Home"), and Quality Stone Veneer, Inc. (successor-in-interest to Quality Stone Veneer NWP, LLC) ("Quality Stone Veneer") (collectively, the "Subcontractors") breached their contractual duty to defend Lennar in the underlying action against Lennar and are jointly and severally liable for Lennar's defense

costs in that dispute and in this ongoing litigation. Lennar's Mot. for Partial Summ. J. as to Certain Defs. on the Duty to Defend (the "Motion") [Doc. No. 498].[1] The Subcontractors oppose. For the reasons that follow, Lennar's Motion [Doc. No. 498] is DENIED.

I. **Background**

Given the court's prior orders, the below factual and procedural summary is limited to the background relevant to the pending Motion [Doc. No. 498]. Lennar, as the developer and contractor[2] of the Hewitts Landing Condominium Project in Hingham, Massachusetts (the "Project"), contracted with various trade partners, including Archer, F.M. Home, and Quality Stone Veneer to perform work on the Project. See Third-Party Pls. Statement of Undisp. Material Facts ("Third-Party Pls. SUMF") ¶ 2 [Doc. No. 500]; see also Third-Party Defs. F.M. Home and Archer's Resp. to Third-Party Pls. SUMF ¶ 2 [Doc. No. 516]; Third-Party Def. Quality Stone Veneer's Resp. to Third-Party Pls. SUMF ¶ 2 [Doc. No. 519].

Lennar entered into agreements with Archer and F.M. Home (the "Subcontract Agreements") concerning the work to be performed at the Project. See Third-Party Pls. SUMF Exs. A, B [Doc. Nos. 501-1, 501-2].[3] Each of the Subcontract Agreements contain a Defense and

---

[1] Lennar's motion also sought partial summary judgment as to J&I Construction, Inc. ("J&I"). While the motion was pending, Lennar and J&I entered into a stipulation of dismissal. See Stip. of Dismissal [Doc. No. 571]. The parties' most recent Joint Status Report [Doc. No. 572] states that Quality Stone Veneer and Lennar have reached a settlement in principle and are finalizing paperwork to dismiss Quality Stone Veneer from the action. Id. at 3. Where that dismissal has not yet been filed, and the parties have not requested any stay of the court's decision as to Quality Stone Veneer, the court includes Quality Stone Veneer in this decision despite the pending settlement.

[2] While the parties dispute the scope of Lennar's role in the Project, it is undisputed that Lennar served, at a minimum, as the Project's developer and that Lennar is identified as the "Contractor" in the various agreements with the Subcontractors. See Third-Party Pls. SUMF Exs. A, B, D [Doc. Nos. 501-1, 501-2, 501-4].

[3] Although Quality Stone Veneer also entered into a Subcontract Agreement, that Agreement appears to be with the Tampa Division Office of Lennar Corporation, not Lennar Hingham

2

Indemnity Provision that provides, inter alia, that the Subcontractor shall indemnify, hold harmless, and defend the Contractor (Lennar), its officers, directors, agents, and employees, against any claims made against Contractor or others as a direct or indirect result of work performed under the Agreements. See Third-Party Pls. SUMF Exs. A, B, C [Doc. No. 501-1, 501-2, 501-4].

On November 29, 2017, the Trustees of the Hewitts Landing Condominium Trust (the "Trust" or "Plaintiff") filed their First Amended Complaint [Doc. No. 1-1] against Lennar and its parent, Lennar Corporation (collectively the "Lennar Defendants") claiming breaches of fiduciary duties, intentional and negligent misrepresentation, negligence, breach of warranty, and unfair and deceptive business practices arising not only from the design, construction, repair of the Project, but also related to the Lennar Defendants' marketing of the Project and management of the Condominium.

On June 21, 2018, Lennar sought leave to file a third-party complaint against twenty-four "trade partners and subcontractors who are or may be liable to [Lennar] for part or all of Plaintiff's claims against them." Unopposed Mot. 1 [Doc. No. 44]. Lennar asserted that "to the extent that the Trust prevails in providing [sic] the existence of any defects alleged, the Putative Third-Party Defendants are liable for any resulting damages and must indemnify [Lennar] for the same." Id. at 2. The court granted leave, Elec. Order [Doc. No. 45], and on June 27, 2018, Lennar filed a Third-Party Complaint [Doc. No. 46] against twenty-four Third-Party Defendants (including Archer and F.M.).

---

Holdings, LLC, or Lennar Northeast Properties, Inc. See Third-Party Pls. SUMF Ex. D, Oct. 30, 2008 Quality Stone Veneer Subcontract Agreement [Doc. No. 501-4].

Pursuant to the court's October 25, 2018 Scheduling Order [Doc. No. 147], the deadline to amend pleadings, except for good cause shown, was January 14, 2019. No motion to amend the Third-Party Complaint [Doc. No. 46] was filed prior to this date.

More than two years later, on March 21, 2021, Lennar moved to amend the Third-Party Complaint [Doc. No. 46] to add three additional Third-Party Defendants, including Quality Stone Veneer, as "a result of its recent discovery that these entities are responsible for certain of the defects alleged in the . . . Trust's First Amended Complaint and subsequent expert reports. Mot. to Amend [Doc. No. 379]. Though the Motion to Amend [Doc. No. 379] identified no other proposed changes, Lennar's Memorandum in Support of the Motion [Doc. No. 380] noted in a footnote that the proposed Amended Third-Party Complaint also "makes other minor corrections and edits throughout to account for information learned during the course of litigation." Id. at 2 n.1. This footnote did not disclose that the proposed Amended Third-Party Complaint also sought to change Count I (Indemnification) to (Contractual and Common Law Indemnification), and to add, inter alia, allegations regarding a "defense" of Lennar and a contractual "defense and indemnity provision" that had not previously been asserted. See Proposed Amend. Third-Party Compl. ¶ 56 [Doc. No. 380-1]. The court allowed leave to add the recently discovered new parties but denied leave as to the other changes (except a name change) where the motion was untimely, lacked candor, and failed to provide good cause for the late amendment. Elec. Order [Doc. No. 401].

On June 24, 2021, Lennar filed its Amended Third-Party Complaint [Doc. No. 407], adding only the recently discovered Third-Party Defendants and leaving Lennar's Preliminary Statement and causes of action unchanged from the 2018 filing.

The <u>Amended Third-Party Complaint</u> [Doc. No. 407] recounts that the underlying First Amended Complaint "alleges the existence of certain design and construction defects at the [Project]" and claims that "[Lennar] and affiliated entities[] are liable for damages the Trust has and will incur as a result of the alleged defects." <u>Id.</u> at 2. The Preliminary Statement continues:

> However, the design and construction work giving rise to the alleged defects was performed by the Third-Party Defendants named herein. Pursuant to their agreements with [Lennar], the Third-Party Defendants agreed to perform their work in a good and workmanlike manner in accordance with agreed specifications and in compliance with all applicable standards of care. The Third-Party Defendants also agreed to indemnify [Lennar] for any losses incurred as a result of defects in the Third-Party Defendants' work. Thus, <u>to the extent that the Trust prevails in proving the existence of any defects alleged,</u> the Third-Party Defendants are liable for any resulting damages and must indemnify [Lennar] for the same.

<u>Id.</u> at 2 (emphasis added). In Count I, Lennar asserted the following claim for indemnification:

> [ ] The Third-Party Defendants each have contractual and common law obligations to indemnify [Lennar] for any and all liabilities, costs, expenses, claims, demands, causes of action, or other losses arising out of or relating to the Third-Party Defendants' respective work on the Project.
>
> [ ] <u>To the extent the Trust is able to prove the existence of any of the Alleged Defects at the Project</u>, the Third-Party Defendants whose work gave rise to the Alleged Defects are liable to indemnify [Lennar] for all losses and costs incurred in connection with the claims in the [First Amended Complaint] related to each Third-Party Defendants' respective work.

<u>Id.</u> at ¶¶ 55-56 (Count I) (emphasis added). Each of Lennar's other causes of action also stated that "to the extent the Trust is able to prove the existence of any of the Alleged Defects at the Project" the Third-Party Defendants may be liable. <u>Id.</u> at ¶ 60 (Count II, Breach of Contract), ¶ 65 (Count III, Breach of the Implied Covenant of Good Faith and Fair Dealing), ¶¶ 68-73 (Count IV, Breach of Warranty), and ¶ 79 (Count V, Negligence).

## II.     Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers Ins. Co., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 322-23.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Anderson, 477 U.S. at 256-57. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Id. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted). The non-moving party must demonstrate through "submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable

inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

### III.    Discussion

Lennar contends that it is entitled to partial summary judgment against the Subcontractors for breach of the contractual duty to defend because, under both the Defense and Indemnity Provisions in its Subcontract Agreements with the Subcontractors and Massachusetts law, Lennar need only notify the Certain Defendants of the claims brought by the Project's trustees alleging construction and design defects to trigger the duty to defend. Lennar Mem. in Supp. of Mot. for Summ. J. ("Lennar Mem.") [Doc. No. 499]; see also Lennar Reply in Supp. of Third-Party Pls. Mot. for Summ. J. ("Lennar Reply") [Doc. No. 532].

The Subcontractors oppose summary judgment on the ground that Lennar's Motion [Doc. No. 498] is moot or otherwise must be denied where the Amended Third-Party Complaint [Doc. No. 407] does not state a claim for breach of the duty to defend, and this court expressly denied Lennar leave to amend the operative third-party complaint to add such a claim. See F.M. Home and Archer Opp'n to Third-Party Pls. Mot. for Partial Summ. J. ("Archer & F.M. Home Opp'n") 10-14 [Doc. No. 515]; Opp'n of Third-Party Def. Quality Stone Veneer to Third-Party Pls. Mot. for Partial Summ. J. ("Quality Stone Veneer Opp'n") 2-6 [Doc. No. 518].

The court agrees that Lennar's Motion for Partial Summary Judgment fails.

First, Lennar argues that the Third-Party Defendants breached a contractual duty to duty to defend. But the operative Amended Third-Party Complaint [Doc. No. 407] asserts allegations relating only to indemnification and not to a duty to defend. The Preliminary Statement states

7

that the Third-Party Defendants agreed to indemnify Lennar and "[t]hus, to the extent that the Trust prevails in proving the existence of any defects alleged, the Third-Party Defendants are liable for any resulting damages and must indemnify Lennar Northeast and Lennar Hingham for the same," id. at 2, and each count similarly asserts that the Third-Party Defendants will be liable, "to the extent the Trust is able to prove the existence of any of the Alleged Defects at the Project, id. at ¶ 56 (Indemnification), ¶ 60 (Breach of Contract), ¶ 65 (Breach of the Implied Covenant of Good Faith and Fair Dealing), ¶¶ 68-73 (Breach of Warranty), ¶ 79 (Negligence). Nowhere does Lennar state a claim for breach of the duty to defend.

Second, Lennar is incorrect that the de minimis notice requirement under Massachusetts law for duty to defend claims relieves them of their obligation to include a claim for breach of the duty to defend in the operative complaint. Lennar relies principally on the Supreme Judicial Court's decision in Psychemedics Corp. v. City of Boston, 486 Mass. 724, 741-42, 161 N.E.3d 399 (2021), as relieving Lennar of its pleading obligations, but this reliance is misplaced. There, the indemnitor sought declaratory relief that it had no duty to defend the City of Boston against certain lawsuits where it allegedly had not received adequate notice of the claims or been allowed to assume the defense in the underlying actions. Psychemedics, 486 Mass. at 726. The Massachusetts Supreme Judicial Court held that "in the absence of any specific contractual provisions by the parties, a simple statement of claims that are encompassed by the indemnification clause is sufficient to trigger the obligation to assume the defense." Id. Thus, Psychemedics speaks to what is sufficient to trigger the duty to defend. It does not suggest that a complaint for breach of that duty has been plead merely by giving the indemnitor notice of the underlying claim.

Third, Lennar is incorrect that their indemnification claim as plead encompasses the duty to defend. Lennar argues that it is common for courts to treat indemnification as encompassing both indemnity and defense obligations, and that here, the indemnification provision indisputably encompasses both indemnity and the duty to defend. Lennar Reply 2-3 [Doc. No. 532] (citing Great N. Ins. Co. v. Paino Assocs., 369 F. Supp. 2d 177, 186 (D. Mass. 2005); Psychemedics, 486 Mass. 724 (2021); Collins v. Kiewit Constr. Co., 40 Mass. App. Ct. 796, 800, 667 N.E.2d 904 (1996)). But the duty to defend is broader than the duty to indemnify, as a contracting party may owe a duty to defend to a party in an action in which no damages ultimately are awarded. See Bos. Symphony Orchestra, Inc. v. Com. Union Ins. Co., 406 Mass. 7, 10, 545 N.E.2d 1156 (1989); Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 368–69, 667 N.E.2d 1149 (1996). It does not follow that having pled the lesser claim of indemnification necessarily includes the broader claim of breach of the duty to defend.[4]

Finally, Lennar's assertion that another session of this court in a related case has already considered the defense and indemnification obligations as one-and-the-same is incorrect. Although that decision quotes the entirety of the Defense and Indemnity Provision and refers to the passage informally as the "indemnification provision," the decision is focused exclusively on the language related to indemnification and does not address the duty of defense at all. See Lennar Northeast Properties, Inc. d/b/a Lennar Northeastern Urban, and Lennar Hingham Holdings, LLC v. Barton Partners Architects Planners Inc., et al., Civ. Action. No. 1:16-cv-

---

[4] If a claim for indemnification is established, damages may include defense costs, including attorneys' fees. Accordingly, discovery into that issue is not an acknowledgment that a claim for breach of duty to defend is implied in the Amended Third-Party Complaint [Doc. No. 407].

12330-ADB, March 30, 2021 Mem. & Order on Lennar's Mot. to Amend and Archer's Mot. for Partial Summ. J. [#250].

Ultimately, where the Amended Third-Party Complaint [Doc. No. 407] does not assert a claim for breach of the duty to defend, Lennar's Motion for Partial Summary Judgment [Doc. No. 498] fails. Because the court denies Lennar's Motion [Doc. No. 498] on this basis alone, the court does not reach the remaining arguments offered in opposition.

## IV.     Conclusion

For the foregoing reasons, Lennar's Motion for Partial Summary Judgment as to Certain Defendants on the Duty to Defend [Doc. No. 498] is DENIED.

IT IS SO ORDERED

July 21, 2023                                                                       /s/ Indira Talwani
                                                                            United States District Judge